**MARRON LAWYERS, APC**
Paul J. Marron (SBN 128245)
pmarron@marronlaw.com
Paul B. Arenas (SBN 167863)
parenas@marronlaw.com
Alexander T. Marx (SBN 295624)
amarx@marronlaw.com
3711 Long Beach Blvd., Suite 601
Long Beach, CA 90807
(562) 432-7422 Telephone
(562) 683-2721 Facsimile

Attorneys for Defendants TForce Final Mile West, LLC and TForce Logistics, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SANTIAGO LIM individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TFORCE LOGISTICS, LLC; TFORCE FINAL MILE WEST, LLC; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: 2:19-cv-4390<br><br>**DEFENDANTS TFORCE FINAL MILE WEST, LLC'S AND TFORCE LOGISTICS, LLC'S NOTICE OF REMOVAL**<br><br>Complaint Filed: January 21, 2019 |

## **NOTICE OF REMOVAL**

Defendants TForce Final Mile West, LLC and TForce Logistics, LLC (hereinafter respectively "TFFM West," and "TForce Logistics," or, collectively, "Defendants") hereby remove Los Angeles County Superior Court Case Number 19STCV05701 from the Superior Court of California to the United States District Court, Central District of California, Western Division, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As explained below, this Court has original jurisdiction

over this action under the Class Action Fairness Act of 2005 ("CAFA"). This is because (1) there are more than 100 members in the putative class Plaintiff Santiago Lim (hereinafter "Plaintiff") asserts; (2) Plaintiff and Defendants are at least minimally diverse; and (3) the aggregate amount in controversy is greater than five million dollars. *See* 28 U.S.C. § 1332(d). Therefore, removal is proper under 28 U.S.C. §§ 1441, 1446, and 1453.

## I. STATEMENT OF THE CASE

1. On February 21, 2019, Plaintiff, individually and on behalf of all others similarly situated, filed a Class Action Complaint for Damages and Equitable Relief in the Superior Court for the State of California, County of Los Angeles, Case Number 19STCV05701 (hereinafter the "State Action"). A true and correct copy of the State Action Complaint as served on Defendants, as well as all other filings in the State Action that were served on Defendants, is attached to the concurrently filed Declaration of Alexander T. Marx in Support of Defendant's Notice of Removal ("A. Marx Decl.") as **Exhibit "A".**

2. On April 22, 2019, Defendants received the State Action Summons and Complaint.

3. The State Action Complaint alleges twelve causes of action: (1) Failure to pay overtime compensation; (2) Reimbursement of business expenses; (3) Unlawful deductions from wages; (4) Failure to provide off duty and complaint meal periods or compensation in lieu thereof; (5) Failure to provide paid, off duty or complaint rest periods, and/or compensation in lieu thereof; (6) Failure to pay regular rates for all hours worked; (7) Failure to keep accurate payroll records; (8) failure to provide accurate, itemized wage statements; (9) Waiting time penalties; (10) Unfair competition and unlawful business practices; (11) Violation of *California Business and Professions Code* § 16600, *et seq.*; and (12) Violations of *California Labor Code* § 432.5.

4. Plaintiff bases each of his claims on the contention that Defendants employed Plaintiff as a delivery driver while misclassifying him as an independent contractor. (State Action Compl., *passim*; esp. ¶¶ 1, 44, 153(i)).

5. Plaintiff asserts these claims on his own behalf as well as on behalf of a putative class which Plaintiff purports to represent. Plaintiff defines this putative class (the "Class") as:

> "All current or former Drivers who personally made one or more deliveries for Defendants in California, while being classified as independent contractors at any time beginning four years before the filing of this Complaint."

(State Action Compl., ¶ 79).

6. This definition also purports to exclude two categories of persons from the alleged class. While the first exclusion is unintelligible – and thus this Notice will disregard it[1] – the second exclusion "excludes any individuals who are already class members in the case of *Lee v. Dynamex*, which alleges similar claims against the same defendants." (State Action Compl., ¶ 79, subpart (ii)).

7. Plaintiff seeks damages for alleged failure to pay overtime compensation; reimbursement of business expenses; unlawful deductions from wages; failure to provide paid, off-duty or compliant meal periods, and/or

---

[1] The first exclusion reads, in relevant part, "[f]or any Class Member, any workweek during which the Class Member had more than one active second or indirect driver working on his or her routes. In other words, this action does not seek to represent the small minority of Drivers who may have been running more than two vehicles (routes) for Defendants." (State Action Compl. ¶ 79, subpart (i)). This purported exclusion is unintelligible in several ways. First, it does not exclude <u>persons</u> from the alleged class but purports instead to exclude <u>workweeks</u>. Second, the phrase "active second or indirect driver" uses terms which are undefined and unclear in this context. Third, the phrase "Drivers who may have been running more than two vehicles (routes) for Defendants," is equivocal (e.g., "may have been"). *Id*. As stated above, given the unintelligible nature of this purported exclusion, this Notice will disregard it.

compensation in lieu thereof; failure to provide paid, off-duty or compliant rest periods, and/or compensation in lieu thereof; failure to pay regular rates for all hours worked in violation of California labor Code §§ 204, 221-223; failure to keep accurate payroll records; failure to keep accurate, itemized wage statements; waiting time penalties; unfair competition and unlawful business practices; violation of California Business and Professions Code §§16600, *et seq.*; and violations of California Labor Code § 432.5. In addition to damages, Plaintiff requests further relief including injunctive relief, accounting and restitution, statutory and/or civil penalties, and attorneys' fees and costs. (State Action Compl., ¶¶ 86-173; Prayer for Relief ¶¶ a-u).

8. Plaintiff's State Action Complaint alleges no specific amount in controversy.

## II.  NO ADMISSION

8. Defendants deny all liability in this case, both as to Plaintiff's individual claims and as to those he raises on behalf of the Class. As an initial matter, Defendants believe that Plaintiff's putative Class definition is unmanageably overbroad, vague, and otherwise improper. Moreover, Defendants believe that any class treatment would be inappropriate here. Defendants further deny that either Plaintiff or any putative Class member was ever a misclassified employee of Defendants. Defendants also deny that Plaintiff and TForce Logistics ever had any contractual relationship or dealings of any kind, and deny that TForce Logistics has any relationship to the factual allegations in the State Action Complaint. Nevertheless, solely to establish the Court's jurisdiction for the purpose of this removal pleading, Defendants assume the allegations in the State Action Complaint to be true.

9. Defendants, in alleging the number of putative Class members, amount in controversy, and other matters in this removal pleading, in no way concede the accuracy of any allegation in the State Action Complaint, or that Plaintiff or any

other putative Class member is entitled to any relief whatsoever.

### III. THIS COURT HAS ORIGINAL DIVERSITY JURISDICTION UNDER CAFA

10. CAFA defines a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute…authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B), 28 U.S.C. § 1711(2).

11. Plaintiff has designated this case as a class action in the caption of the State Action Complaint and brings his claims on behalf of himself and on behalf of all others similarly situated. (State Action Compl., ¶ 27).

12. CAFA vests Federal Courts with original jurisdiction to hear class actions if (1) the parties are minimally diverse; (2) the class has at least 100 members; and (3) the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5)(B). Because these three requirements are satisfied, CAFA removal is appropriate here.

#### A. THE PARTIES ARE DIVERSE

13. Diversity under CAFA is satisfied when the parties are at least <u>minimally</u> diverse. That is, when any member of a class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2).

14. For purposes of CAFA jurisdiction, the citizenship of all members of a putative class, named and unnamed, is considered. 28 U.S.C. § 1332(d)(1)(D).

15. Under CAFA, an unincorporated association is deemed a citizen of both the State where it has its principal place of business and the State under whose laws it is organized. 28 U.S.C. §1332(d)(10); *Roling v. E\*Trade Securities, LLC*, 756 F.Supp.2d 1179, 1184-85 (N.D. Cal. 2010), *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (explaining that §1332(d)(10) "departs from the rule that frequently destroys diversity jurisdiction, that [an] unincorporated association's citizenship for diversity purposes can be determined only by reference to all of the

5
NOTICE OF REMOVAL

entity's members." (citations and quotation marks omitted)).

16. An LLC is an "unincorporated association" for the purposes of CAFA. *Roling v. E*Trade Securities, LLC*, 756 F.Supp.2d 1179, 1184-85 (N.D. Cal. 2010).

17. Defendant TFFM West is and was at all relevant times, including at the time of filing the State Action and at the time of this Notice of Removal, an LLC organized under the laws of Delaware.

18. Defendant TForce Logistics is and was at all relevant times, including at the time of filing the State Action and at the time of this Notice of Removal, an LLC organized under the laws of Delaware.

19. The term "principle place of business" refers to "the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).[2] This place is metaphorically called the entity's "nerve center," and is typically found at its headquarters. *Id.*, at 81.

20. Pursuant to *Hertz*, TFFM West has its principal place of business in Dallas, Texas. Specifically, TFFM West is headquartered in Dallas, Texas.

21. Pursuant to *Hertz*, TForce Logistics has its principal place of business in Dallas, Texas. Specifically, TForce Logistics is headquartered in Dallas, Texas.

22. Because TFFM West is an LLC organized under the laws of Delaware and has its principal place of business in Texas, TFFM West is a citizen of Delaware and Texas.

---

[2] Although *Hertz*, which dealt with a CAFA removal, discusses citizenship of corporations, holdings of numerous courts confirm that *Hertz*'s analysis of "principal place of business" applies equally to that term as it appears in 28 U.S.C. §1332(d)(10). *See Pae v. Fox Restaurant Concepts, LLC*, 2017 WL 3184464, at *2 (C.D. Cal. July 25, 2017); *see also Erie Ins. Exchange v. Erie Indem. Co.*, 722 F.3d 154, n. 7 (3d Cir. 2013) ("CAFA itself evinces an intent that suits by unincorporated associations be treated like suits by corporations[.]").

23. Because TForce Logistics is an LLC organized under the laws of Delaware and has its principal place of business in Texas, TForce Logistics is a citizen of Delaware and Texas.

24. Plaintiff's State Action Complaint states that Plaintiff "is a resident of Monrovia, California in the County of Los Angeles." (State Action Compl., ¶ 37).

25. Plaintiff's State Action Complaint defines the alleged class to include "[a]ll current or former Drivers who personally made one or more deliveries for Defendants in California, while being classified as independent contractors at any time beginning four years before the filing of this Complaint." (State Action Compl., ¶ 79).

26. Accordingly, by Plaintiff's own account he is a citizen of California. And, based on the alleged class's being limited to individuals who worked in California during the class period, Defendants are informed and believe that at least a majority of the alleged class's members are citizens of California. *See Carolina Cas. Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014) (holding that diversity allegations may be based on information and belief).

27. Because Plaintiff and most of the alleged class members are citizens of California, and because both TFFM West and TForce Logistics are citizens of Delaware and Texas, the parties are at least minimally diverse.

28. Because Plaintiff and most of the alleged class members are California citizens while there is no California defendant, neither the "local controversy" nor the "home-state controversy" exception to CAFA jurisdiction applies here. 28 U.S.C. § 1332(d)(3) and (4).

**B.   THE CLASS HAS AT LEAST 100 MEMBERS**

29. CAFA requires that the putative class have at least 100 class members. 28 U.S.C. § 1332(d)(5)(B).

30. Plaintiff's Class's definition is extremely broad, encompassing: "All current or former Drivers who personally made one or more deliveries for

Defendants in California, while being classified as independent contractors at any time beginning four years before the filing of this Complaint." (State Action Compl., ¶ 79). Plaintiff's proposed class definition excludes "any individuals who are already class members in the case of *Lee v. Dynamex*, which alleges similar claims against the same defendants. The class in the *Lee v. Dynamex* case includes only individuals who returned timely and complete questionnaires as part of the discovery process in that case." *Id.*

31. Although this definition is open-ended, based on an initial review of TFFM West's records there are more than 1300 persons who contracted to deliver packages through TFFM West's California branch locations during the class period.

32. At present, the number of persons who are class members in the case of *Lee v. Dynamex* is 229. (A. Marx Decl., ¶ 11).

33. Even in the highly unlikely event that every single class member in *Lee v. Dynamex* is among the more than 1300 persons who contracted to deliver packages through TFFM West's California branch locations during the class period, that would still leave approximately 1100 persons in the alleged Class.

34. Therefore, even by a conservative estimate, the alleged class has more than 100 members.

## C. THE AMOUNT IN CONTROVERSY IS GREATER THAN FIVE MILLION DOLLARS

35. CAFA authorizes removal of class actions where, the above factors being satisfied, the aggregate amount in controversy for the class exceeds $5,000,000. 28 U.S.C. §1332(d)(2).

36. Plaintiff's State Action Complaint is silent as to amount in controversy. Plaintiff's failure to specify any damages, however, does not defeat this Court's jurisdiction. Rather, where a plaintiff's complaint does not allege any amount in controversy, a defendant's notice of removal may do so. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014). The removal notice need

only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and does not need to contain evidentiary submissions. *Id.*, at 554. "The removing party's burden is not daunting, and defendants are not obligated to research, state, and prove the plaintiff's claim for damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009).

37. The amount in controversy under CAFA is measured by the maximum amount that the putative class could potentially recover, in the aggregate, based on the complaint's allegations. *Standard Fire Insurance Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013). Furthermore, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

38. It is apparent from a review of the State Action Complaint, and an initial review of TFFM West's records, that the amount in controversy exceeds the $5,000,000 requirement for CAFA jurisdiction.

39. As explained in ¶ 33, above, although Defendants are unaware of the exact number of members of the alleged Class, 1100 persons is a conservative estimate of the Class's size. Accordingly, the aggregate amount in controversy requirement will be met if each Class member has, on average, an individual amount in controversy of more than **$4,545.45**.

40. Plaintiff asserts twelve causes of action in the State Action Complaint both individually and on behalf of the Class: (1) Failure to pay overtime compensation; (2) Reimbursement of business expenses; (3) Unlawful deductions from wages; (4) Failure to provide paid, off-duty, or compliant meal periods, and/or compensation in lieu thereof; (5) Failure to provide paid, off-duty or compliant rest periods, and/or compensation in lieu thereof; (6) Failure to pay regular rates for all hours worked; (7) Failure to keep accurate payroll records; (8) Failure to provide accurate, itemized wage statements; (9) Waiting time penalties; (10) Unfair competition and unlawful business practices; (11) Violation of California business

and professions code; and (12) Violations of California Labor Code § 432.5.

41. In addition to compensatory damages for the above claims, Plaintiff requests restitution, civil and statutory penalties, and attorneys' fees.

42. Importantly, the State Action Complaint does not limit the number of violations in any way. Rather, it alleges <u>universal</u> violations by Defendants with respect to at least some of the claims in the State Action Complaint. In particular, the State Action Complaint alleges that Class members' damages arose from their <u>status</u> as misclassified employees, which would have occurred during the <u>entirety</u> of the Class member's alleged employment. (*See* State Action Compl. ¶ 1 ("This is a putative class action arising out of Defendants' misclassification of their delivery drivers ('Drivers') as 'independent contractors' instead of 'employees.'")). The allegation of misclassification raises a necessary inference of universal violations with respect to at least some, if not all, of Plaintiff's claims.

43. Therefore, for certain violations discussed below, **this Notice may properly assume that Plaintiff is asserting violations for each workweek and workday for each Class member**. *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (holding that, where a class was specifically defined to include only drivers "all of whom allegedly should have been classified as employees rather than as independent contractors," assuming universal violations for the purpose of calculating amount in controversy under CAFA was proper); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp.2d 1141, 1149-50 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating amount in controversy when the complaint does not allege a more precise calculation . . . . Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate.").

44. For example, with respect to alleged failure to reimburse business expenses, the State Action Complaint alleges universal violations, stating

"Defendants require Drivers to pay out of pocket for various items that are essential to Defendants' business, without reimbursing the Drivers for these costs." (State Action Compl., ¶ 25, subpart (ii)).

45. With respect to alleged "Unlawful Deductions," the State Action Complaint alleges universal violations, stating: "Defendants required that Drivers incur various costs and use various items, yet **do not** cover the costs of these items." (State Action Compl., ¶ 25, subpart (iii) (emphases added)).

46. With respect to alleged meal and rest period violations, the State Action Complaint also alleges universal violations, stating: "Defendants **do not** provide meal periods or authorize and permit rest periods that are truly duty-free, not subject to interruption, and/or timely. . . . Even when the Drivers are able to steal away some kind of "break," it is subject to interruption from Defendants' dispatch." (State Action Compl., ¶ 25, subpart (iv) (emphasis added)).

47. With respect to wage statements, the State Action Complaint also alleges universal violations, stating "[w]age statements provided to Drivers by Defendants **do not show**, among others, gross wages, total hours worked, number of piece-rate units earned, all applicable piece and/or hourly rates, and net wages earned." (State Action Compl., ¶ 75).

## ALLEGED FAILURE TO PAY OVERTIME

48. Plaintiff seeks to recover for Defendants' alleged failure to pay overtime compensation. (State Action Compl., ¶¶ 25, 28, 65, 86-91). Specifically, the State Action Complaint alleges that "Defendants have failed to pay Plaintiff, and other members of the Class, overtime compensation for the hours they worked in excess of the maximum hours permissible by law[.]" (State Action Compl., ¶ 88).

49. A calculation of amount in controversy for overtime compensation requires a base hourly wage. The State Action Complaint does not allege any base hourly wage that Plaintiff or other members of the alleged class were, or should have been, paid. Accordingly, for the purpose of this Notice, Defendants will assume for

each member of the alleged Class a base hourly wage of **$10.00**, which was the California minimum wage for a majority of the Class period.

50.  California Labor Code § 510(a) provides that "[a]ny work in excess of eight hours in one workday and any work on excess of 40 hours in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee."

51.  Plaintiff alleges that he "worked approximately 18 hours per day and 6 per week" (State Action Compl., ¶ 25), over the course of an "approximate six-year" tenure with the company. (State Action Compl., ¶ 22).

52.  Therefore, assuming fifty (50) workweeks in a year, and assuming the $10/hour base rate of pay specified above, and assuming Plaintiff's allegations to be true, he would be entitled to **$186,000.00** in overtime compensation.[3]

53.  Plaintiff does not allege any specific hours or rate of overtime violations for the class.[4] Nor are Defendants able to readily ascertain what figures for alleged overtime violations might be imputed. However, the amount in controversy for claims of failure to pay overtime compensation would be substantial even assuming Plaintiff's claims to be vastly different than those of other alleged Class members. Assuming that the Class members, have, on average, failure to pay overtime claims for only **1%** of Plaintiff's claim (i.e., for $1,860 per Class member – 1% of

---

[3] A breakdown of how Defendants calculated the $186,000.00 figure for Plaintiff's overtime compensation can be found in the Declaration of Alexander T. Marx, attached hereto. (A. Marx Decl., ¶ 12).

[4] Although Plaintiff's allegations of overtime violations give rise to a legitimate inference of a 100% violation rate (*See Coleman*, *supra*, 730 F. Supp.2d at 1149-50), and although Plaintiff implies a 100% violation rate with respect to himself, (State Action Compl., ¶ 25), this Notice does not assume a 100% violation rate for this claim.

$186,000), the amount in controversy for the Class for overtime compensation would be **$2,232,000.00** ($1,860.00 per Class member x 1,100 class members, + $186,000 for Plaintiff's claim = $2,232,000.00).

## ALLEGED FAILURE TO REIMBURSE BUSINESS EXPENSES

54. Plaintiff seeks to recover for Defendants' alleged failure to reimburse Plaintiff's and alleged Class members' "necessary expenditures and losses in direct consequence of the discharge of their employment duties and in obedience to the directions of Defendants, for which Defendants did not reimburse Plaintiff and Class members[.]" (State Action Compl., ¶ 96). These alleged business expenses include items such as fuel, vehicle maintenance and repairs for vehicles used to make deliveries.

55. Although Defendants cannot readily derive an amount in controversy for failure to reimburse expenses from TFFM West's records, it is clear that the amount in controversy for this claim would be substantial. Fuel and vehicle maintenance charges alone could run well into the thousands of dollars per class member.

## ALLEGED FAILURE TO PROVIDE MEAL PERIODS AND REST PERIODS

56. Plaintiff seeks to recover for Defendants' alleged failure to provide paid, off-duty or compliant meal periods, and/or compensation in lieu thereof (State Action Compl., ¶ 111-118), and for Defendants' alleged failure to provide paid, off-duty or complaint rest periods, and/or compensation in lieu thereof (State Action Compl., ¶ 119-125).

57. Under Cal. Lab. Code §226.7, and Industrial Welfare Commission Wage Order No. 9-2001 §§11(B) and 12, an employee is entitled to a ten-minute rest period for each period of work exceeding four hours, and a thirty-minute meal period for each period of work exceeding five hours. The employee is entitled to one hour of pay at his or her hourly rate for each day he or she is denied a meal period,

and each day he or she is denied a rest period.

58. Based on the $10 hourly wage assumed above, and assuming twenty (20) weeks worked per member of the allege Class,[5] the amount in controversy for missed meal/rest periods is no less than **$2,200,000** (20 workweeks x 5 days per week x 1 hour of pay at $10.00 per hour x 1,100 Class members = $1,100,000, doubled to include both meal and rest periods).

## ALLEGED FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS

59. Plaintiff seeks to recover for Defendants' alleged failure to "provide Plaintiff and the Class with accurate, itemized wage statements." (State Action Compl., ¶¶ 28, 75, 138-145).

60. Pursuant to Cal. Lab. Code §§226 and 1174, an employer who fails to provide non-exempt employees with itemized wage statements is liable to its employees for the greater of the actual damages suffered by the employee, or $50 in civil penalties for the initial pay period in which a violation occurred, and $100 per employee for each subsequent pay period, up to a statutory maximum of $4,000.

61. Here, based on the same assumptions as above, and assuming a two-week pay period for a total of ten pay periods per Class member (based on the above-stated assumption of 20 workweeks), the amount in controversy for failure to provide itemized wage statements is no less than **$1,045,000** (10 pay periods in 20 weeks; $50 for the first pay period and $900 for the remaining 9 pay periods ($100

---

[5] Plaintiff has not alleged any number of workweeks for the alleged Class. This Notice of Removal assumes 20 workweeks per member of the alleged Class as a conservative figure. Based on an initial review of TFFM West's records a large majority of potential class members had active contracts for far longer than this. Plaintiff himself claims to have made deliveries for approximately six years. (State Action Compl., ¶ 49). *See Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009) (in the context of an opposition to a remand motion, where plaintiff did not allege amount of time worked, assumption of 40 workweeks was valid where calculations were "relatively conservative [and] made in good faith[.]")

per period x 9 periods) x 1,100 members in the alleged class).

## WAITING TIME PENALTIES

62. The State Action Complaint alleges that "Plaintiff and other members of the Class have been terminated and/or left their employment with Defendants during the statutory [sic] period." (State Action Compl., ¶ 148).[6]

63. The State Action Complaint further alleges that, "Defendants willfully failed and refused, and continue to willfully fail and refuse, to timely pay minimum wages, overtime compensation and sums wrongfully deducted from compensation to Plaintiff and to all other proposed Class Members whose employment with Defendants have ended or been terminated at any point during the [class] period. As a result, Defendants are liable . . . for waiting time penalties[.]" (State Action Complaint, ¶¶ 146-149).

64. Based on an initial review of TFFM West's records, Defendants estimate that approximately **80%** of the alleged Class members' contracts ended during the class period (thus, taking the State Action Complaint's allegations as true, their "employment . . . ended or [was] terminated").

65. Pursuant to Cal. Lab. Code §§ 201-203, these putative Class members would be entitled to wait time penalties in the amount of their daily rate of pay multiplied by the number of days the wages went unpaid, up to a maximum of thirty days. Further, because the State Action Complaint alleges that the wages owed were <u>never</u> paid, the thirty day maximum would apply to each Class member who allegedly resigned or was terminated.

66. Based on the above, the amount in controversy for waiting time penalties is no less than **$2,112,000** (30 days x $10.00 per hour x 8 hours per day x 1,100 putative Class members x 80% who allegedly had their employment end

---

[6] This section of the State Action Complaint refers without explanation to an unspecified "statutory period." This Notice will assume that this use of "statutory period" means the proposed class period.

during the class period).

## ATTORNEYS' FEES

67. The State Action Complaint asserts various bases on which Plaintiff and the Class are entitled to an award of attorneys' fees. (*See* State Action Compl., ¶¶ 27, 30, 91, 99, 110, 134, 137, 144, 148, 165, 172).

68. An award of attorneys' fees is properly included in calculation of amount in controversy for the purpose of CAFA removal. *See Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (*overruled on other grounds*, *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013)).

69. In calculating attorneys' fees for the purpose of CAFA in wage and hour cases, California District Courts routinely apply a benchmark figure of 25% to the value of the claims asserted.[7]

70. Applying the 25% benchmark figure to the above claims for (1) failure to pay overtime; (2) meal and rest periods; (3) failure to provide itemized wage statements; and (4) waiting time penalties, <u>which are only some of the claims alleged</u>, yields an estimated amount in controversy for attorneys' fees of no less than **$1,897,250** ($2,232,000 failure to pay overtime + $2,200,000 meal and rest breaks + $1,045,000 wage statements + $2,112,000 waiting time penalties x 25% benchmark figure).

71. Based on the facts above, **the total amount in controversy is, at a minimum, no less than $9,486,250** for alleged failure to pay overtime ($2,232,000), failure to provide meal and rest periods ($2,200,000), failure to provide itemized wage statements ($1,045,000), waiting time penalties ($2,112,000), and attorneys' fees ($1,897,250). Based on a conservative calculation

---

[7] *See Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359 at *7 (C.D. Cal. Apr. 28, 2015); *Hamilton v. Wal-Mart Stores, Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017); *Yocupicio v. PAE Group, LLC*, 2015 WL 7405445, at *6 (C.D. Cal. Dec. 29, 2014) (*rev'd on other grounds*, 795 F.3d 1057 (9th Cir. 2015)).

of the potential amount in controversy <u>for those claims alone</u>, the amount in controversy <u>already</u> exceeds the $5,000,000 statutory threshold for CAFA removal. Even if attorneys' fees are excluded from this total (though they are properly included), the CAFA threshold is still met.

72.  Plaintiff's additional claims for failure to reimburse business expenses, unlawful deductions from wages; failure to provide regular rates for all hours worked, failure to keep accurate payroll records, unfair competition and unlawful business practices, violation of California Business and Professions Code § 16600, *et seq.*, and violation of California Labor Code § 432.5 unfair business practices, and conversion, which could add thousands to each putative Class member's claim and concomitantly increase the attorneys' fee award, only underscore that the above figure is conservative and the Statue Action Complaint likely puts a far larger amount into controversy. As mentioned above, claims for reimbursement of business expenses alone could range well into the thousands of dollars per claimant. And, Plaintiff seeks other relief including restitution of funds, which further emphasizes that the statutory requirement is met.

73.  Based on these facts herein, the CAFA amount in controversy requirement is satisfied.

## IV.  DEFENDANTS HAVE SATISFIED ALL REQUIREMENTS FOR REMOVAL

74.  As explained above, CAFA's requirements for diversity, class size, and amount in controversy are all satisfied here.

75.  In accordance with 28 U.S.C. § 1446(a), true and correct copies of all pleadings, documents and orders from Plaintiff's state court filing which have been served on Defendants are being filed with this Notice of Removal, incorporated herein and attached to concurrently filed Declaration of Alexander T. Marx as **Exhibit "A".**

76.  This Notice of Removal has been filed within 30 days of the date that

Defendants were served with the State Action summons and complaint. Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

77.  Venue is proper because the State Action was filed in the Superior Court of the State of California, Los Angeles County. The Central District of California, Western Division, is the Federal judicial district and division encompassing the circuit court where the State Action was filed by Plaintiff.

78.  Defendants will promptly serve a Notice to Adverse Party on Plaintiff, with this Notice of Removal and all attachments, and file the same in the Superior Court of California, Los Angeles County, in compliance with 28 U.S.C. § 1446(d).

## V.  CONCLUSION

79.  By this Notice of Removal, Defendants do not waive any objections they may have to service, jurisdiction and venue, as well as any other defenses or objections that it may have to this action, including but not limited to, affirmative defenses, counter-claims, cross-claims, and demands for arbitration. Defendants intend no admission of fact, law or liability by this Notice and specifically reserves its rights to all defenses, motions, and pleas.

WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Los Angeles to this Court.

Dated: May 21, 2019                              MARRON LAWYERS, APC


By:/s/Alexander T. Marx
　　Paul Marron
　　Paul B. Arenas
　　Alexander T. Marx
　　Attorneys for Defendants TForce Final
　　Mile West, LLC and TForce Logistics,
　　LLC

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 3711 Long Beach Blvd., Suite 601, Long Beach, CA 90807.

On May 21, 2019, I served the foregoing document described as **DEFENDANTS TFORCE FINAL MILE WEST, LLC'S AND TFORCE LOGISTICS, LLC'S NOTICE OF REMOVAL** on the interested parties:

Joshua Konecky
Leslie H. Joyner
Nathan B. Piller
SCHNEIDER WALLA CE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
[*Attorneys for Santiago Lim, individually and on behalf of all others similarly situated*]

[X] BY PERSONAL SERVICE VIA MESSENGER SERVICE: I served the documents by providing them to Nationwide Legal, a professional messenger service for personal service at the addresses listed above.

[X] FEDERAL:  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **May 21, 2019**, at Long Beach, California.

By: _____
Mini Leano