# EXHIBIT A1

## ORIGINAL

Joshua Konecky, SBN 182897
Leslie H. Joyner, SBN 262705
Nathan B. Piller SBN 300569
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com
npiller@schneiderwallace.com

Attorneys for Plaintiffs

**FILED**
Superior Court of California
County of Los Angeles

FEB 21 2019

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Steven Drew

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| SANTIAGO LIM individually and on behalf of all others similarly situated, | CASE NO. **19STCV05701** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **(1) CALIFORNIA LABOR CODE;** |
| TRANSFORCE, INC., TFORCE LOGISTICS, LLC, TFORCE FINAL MILE WEST, LLC; and DOES 1-10, inclusive, | **(2) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS; and** |
| | **(3) CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200, et seq.** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Santiago Lim, by and through his undersigned attorneys, hereby brings this Class Action Complaint against Defendants Transforce, Inc., TForce Logistics, LLC, TForce Final Mile, LLC, and Does 1-10, inclusive (hereinafter collectively referred to as "Defendants" or "Transforce") and alleges as follows:

-1-

1 | **NATURE OF THE CASE**

2 | 1.     This is a putative class action arising out of Defendants' misclassification of their

3 | delivery drivers ("Drivers") as "independent contractors" instead of "employees."  Defendants

4 | operate a same-day delivery service. Throughout the proposed class period, Defendants have

5 | employed hundreds of Drivers in California.  Under Supreme Court authority, Defendants are the

6 | legal employer of the Drivers they hire to provide this service to their customers.   Yet, by

7 | misclassifying the Drivers as independent contractors, rather than as employees, Defendants

8 | continue to evade their obligation to pay these Drivers the full wages and employment benefits

9 | they are due under applicable law.  Defendants also unlawfully sidestep payroll and other taxes

10 | that are the responsibility of an employer, depriving government coffers of needed revenue and

11 | harming the public.

12 | 2.     Defendants' misclassification scheme has resulted in substandard, exploitative

13 | working conditions. Defendants rely solely on the "independent contractor" label to avoid paying

14 | overtime, avoid reimbursing work-related expenses incurred by their workers, and avoid

15 | providing an opportunity for Drivers to take time during their long work days to take off duty

16 | meal and rest periods.  Defendants also use the independent contractor designation to unlawfully

17 | and unfairly off-load their own business costs and risks onto the workers. The workers, in turn,

18 | often do not have the resources to absorb these kinds of costs and risks without incurring

19 | significant and even debilitating debt.

20 | 3.     Defendants have required the Drivers, including Plaintiff, to work well in excess

21 | of 8 hours per day and 40 hours per week to meet demanding delivery assignments that leave

22 | little, if any, time for rest. For example, Plaintiff, Santiago Lim, regularly had to work from 7 a.m.

23 | into the wee hours of the next morning, six days per week, to meet Defendants' delivery demands.

24 | At the same time, Mr. Lim had to pay out of his own pocket for fuel, insurance, maintenance,

25 | repairs, and even a uniform bearing Defendants' name and logo—all Defendants' own business

26 | costs. Working less was not an option because Defendants' meager piece rate pay system made

27 | it difficult for Mr. Lim to make ends meet without making deliveries around the clock. Moreover,

28 | Mr. Lim knew that Defendants had, and often exercised the right to withhold future work or even

1  terminate Drivers if they turned down assignments.

2      4.      During some weeks, the expenses Drivers must incur for Defendants are so high
3  in comparison to the Drivers' modest earnings and long hours that they risk losing money. This
4  often happened to Mr. Lim, for whom an expensive car repair could mean struggling to afford
5  just the gas needed to arrive at work when the repair was complete.

6      5.      Last year, the Supreme Court of California adopted the "ABC" test for determining
7  whether workers just like Mr. Lim and the other Drivers in this case are employees or independent
8  contractors as a matter of law. *Dynamex Operations W. v. Superior Court* (2018) 4 Cal. 5th 903,
9  964. That case addressed the *same* defendant and business model as in this action (the
10  "Transforce" and "TForce" entities were formerly known as "Dynamex").

11      6.      *Dynamex* held that "unless the hiring entity establishes (A) that the worker is <u>free</u>
12  <u>from the control and direction</u> of the hiring entity in connection with the performance of the work,
13  both under the contract for the performance of the work and in fact, (B) that the worker performs
14  <u>work that is outside the usual course of the hiring entity's business</u>, and (C) that the worker is
15  <u>customarily engaged in an independently established trade, occupation, or business</u>, the worker
16  should be considered an employee and the hiring business an employer... The hiring entity's
17  failure to prove any one of these three prerequisites will be sufficient in itself to establish that the
18  worker is an included employee, rather than an excluded independent contractor..." As explained
19  herein, Defendants cannot establish even one of these necessary elements, much less all three:

20      7.      <u>Factor A: The Drivers are Not Free from Defendants' Control and Direction</u>:
21  Defendants retain the right to exercise extensive control over the way the Drivers perform their
22  deliveries.  Among other things, Defendants retain the right to control the Drivers' schedules,
23  routes, customers, equipment, appearance, pay rate, insurance, helpers, and other details of the
24  job.  Defendants also retain the right to terminate the Drivers with or without cause, just like an
25  at-will employee.

26      8.      Defendants assign the Drivers deliveries and reserve the right to control the
27  number and nature of the deliveries they assign. Defendants use a proprietary mobile application
28  to transmit delivery assignments, expected delivery times, and other instructions. Defendants

1  require the Drivers to complete their assigned deliveries on the day of the assignment and expect

2  that Drivers will follow the instructions transmitted through its own mobile application.

3  Defendants also require that their Drivers comply with specific directives regarding delivery

4  times, the sequence of stops, and customer service obligations, among other customer

5  specifications, based on covenants negotiated between Defendants and their customers.

6       9.     Defendants have frequently punished Drivers for turning down assignments or

7  attempting to negotiate rates by withholding future work. This is a perennial threat because

8  Defendants are the gatekeepers of the customers and delivery assignments, making the Drivers

9  dependent on the company for their work.

10       10.    Defendants determine which of its customers the Drivers will serve, while

11  generally prohibiting the Drivers from soliciting an independent relationship with any of them.

12  The common contracts Defendants require the Drivers to sign also contain a "non-compete"

13  clause forbidding the Drivers from diverting any delivery order received through or on behalf of

14  Defendants to a competitive delivery service.

15       11.    Defendants impose a set of uniform "Standard Operating Procedures" on the

16  drivers, which promulgate rules Drivers must follow regarding vehicle safety, communications

17  with dispatch, communications with third parties, insurance requirements, loss reduction,

18  coaching, attitude, reporting and monitoring, compensation, and deductions from pay, among

19  other rules.

20       12.    Defendants have a Compliance Department tasked with ensuring that Drivers meet

21  various regulatory requirements. The Compliance Department monitors whether Drivers' Carrier

22  Safety Administration (CSA) scores meet regulatory requirements, information Defendants use

23  at their discretion in determining whether to terminate any Driver. Defendants retain the discretion

24  to terminate any Driver based on concerns regarding safety scores, even if the scores are not so

25  low as to trigger a response from regulatory authorities.

26       13.    Defendants require that Drivers purchase a minimum level of insurance naming

27  Defendants as an additional insured. The insurance requirements are set by Defendants based on

28  the insurance policy they separately negotiate with their carrier, not on the minimum legal

1   requirements or the Drivers' choice.

2       14.    Defendants further control how Drivers perform their work by generally requiring

3   them to wear uniforms bearing Defendants' name and corporate logo, the cost of which is

4   deducted directly from the Drivers' paychecks.

5       15.    Plaintiff, Santiago Lim, experienced Defendants' exploitative practices firsthand.

6   Mr. Lim worked a regular, 6-day-a-week schedule performing assigned deliveries for Defendants

7   on their Red Cross account in the County of Los Angeles. Mr. Lim had to arrive early in the

8   morning to be available for delivery assignments. Upon arrival, he had to go to Defendants' office

9   next to the Red Cross facility in Pomona, CA, where Defendants' dispatchers would inspect him

10   and tell him to put on his uniform bearing Defendants' corporate name and logo if he hadn't

11   already. Thereafter, he would pick up and deliver medical supplies and blood to hospitals

12   throughout Southern California, pursuant to Defendants' assigned delivery schedules and

13   deadlines.  His delivery work was dependent on Defendants' assignments.  For example, as just

14   one of his daily assignments, Mr. Lim might be required to make a string of deliveries to hospitals

15   in the San Fernando Valley, which alone could take 8-10 hours to complete.  To make ends meet

16   and to avoid being punished with reduced work in the future, Mr. Lim would have to complete

17   multiple delivery runs on top of this, which routinely took him into the wee hours of the morning.

18   Indeed, it was common for Mr. Lim to arrive at the Red Cross location at 7 a.m., only to return

19   home at 2 a.m. the next morning.

20       16.    Factor B: The Drivers' Delivery Work is Within the Usual Course of Defendants'

21   Delivery Business: The Drivers make deliveries to the locations of Defendants' customers, an

22   integral part of Defendants' same-day delivery business. No specialized skills are required for the

23   job.

24       17.    Defendants' business is the quintessential same-day delivery business. Defendants

25   offer state-of-the-art routing, GPS, and scanning technology to facilitate the deliveries performed

26   by the Drivers. Defendants obtain the customers for the deliveries, set the rate that the customers

27   will be charged, notify the Drivers of where to pick up and deliver the packages, track the

28   packages, and require the Drivers to use their own tracking and recordkeeping system.

18.     Defendants' delivery business could not function without their labor force of Drivers. The Drivers' job of making deliveries is firmly within the usual course of Defendants' delivery business.

19.     Factor C: The Drivers are Not Customary Engaged in an Independently Established Business: Defendants used to treat the Drivers as employees and pay them in accordance with the California Labor Code and applicable Wage Orders. In 2004, Defendants converted all of their Drivers to so-called "independent contractors" after management concluded that such conversation would generate economic savings for the company. This conversion involved a process by which all Drivers had to sign standardized contracts purporting to establish their so-called "independent contractor" status.

20.     Defendants' practice of requiring Drivers to sign standardized contracts labeling them as so-called "independent contractors" in order to work for Defendants persists to this day. The Drivers in the Class here are predominantly individual laborers who do not have truly independent businesses.  While Defendants may require that the Drivers go through the formalities of forming companies or sole proprietorships in their name to create the illusion of independence, the reality underneath the label is that the Drivers still work directly for Defendants and remain dependent on Defendants as a matter of economic reality.

21.     The Drivers generally do not market their services, but rather rely on Defendants for all the customers, packages, and deliveries. Not surprisingly, Defendants forbid their Drivers from diverting any delivery order received through or on behalf of Defendants to a competitive delivery service.

22.     Although Defendants purport to allow Drivers to hire other persons to make deliveries and/or provide help, the vast majority of Drivers have only one vehicle and work alone. For instance, Plaintiff worked for Defendants by himself, without hiring any other individual or using more than one vehicle at a time to make deliveries, over the course of his approximate six-year tenure with the company. And, as discussed herein, Plaintiff is not seeking to represent individuals who had more than one additional driver at a time helping to run his or her routes.

23.     Even for the Drivers who have second drivers and helpers, Defendants restrict their

1   ability to operate as an independent business by setting standards for who may work within them

2   as a second driver or helper. Defendants require that all second ("indirect") drivers and helpers

3   be registered in Defendants' electronic database.  Second drivers and helpers also are subject to

4   Defendants' approval before they can work with a Driver. And, Defendants retain, and have often

5   exercised the right to terminate second drivers and helpers.

6       24.     For these reasons, Defendants' "independent contractor" designation is merely a

7   label designed to evade the obligations of an employer, not a reflection that the Drivers are

8   customarily engaged in an independently established trade. *Dynamex Operations W. v. Superior*

9   *Court* (2018) 4 Cal. 5th 903, 962 ("A company that labels as independent contractors a class of

10  workers who are not engaged in an independently established business in order to enable the

11  company to obtain the economic advantages that flow from avoiding the financial obligations that

12  a wage order imposes on employers unquestionably violates the fundamental purposes of the

13  wage order. The fact that a company has not prohibited or prevented a worker from engaging in

14  such a business is not sufficient to establish that the worker has independently made the decision

15  to go into business for himself or herself.").

16      25.     Defendants' unlawful misclassification scheme results in systematic violations of

17  California's wage and hour laws, including:

18      i.      Failure to pay overtime. Defendants routinely require and/or suffer and permit the

19              Drivers to work well in excess of 8 hours per day and 40 hours per week, without

20              paying them for such hours at the statutorily mandated overtime premium rate of

21              time-and-a-half. For instance, Plaintiff worked approximately 18 hours per day

22              and 6 per week, without being paid any overtime or double time premium.

23      ii.     Failing to reimburse the Drivers for Defendants' own business expenses that they

24              require Drivers to pay for out of their own pockets: Defendants require Drivers to

25              pay out of pocket for various items that are essential to Defendants' business,

26              without reimbursing the Drivers for these costs. For instance, the Drivers must pay

27              out of their own pocket for the substantial cost of fuel, a crucial component of

28              Defendants' delivery operation. Other costly out-of-pocket expenses include car

1     repairs and maintenance.

2     iii.    <u>Unlawful deductions:</u> Defendants require that the Drivers incur various costs and

3     use various items that are essential to the delivery business, and yet do not cover

4     the costs of these items. Rather, Defendants systematically deduct various costs

5     directly from the Drivers' pay, such as the cost of insurance and uniforms.

6     iv.    <u>Failing to authorize, permit and/or make available meal and rest periods to Plaintiff</u>

7     <u>and the Class as required by California law.</u> To be compliant, meal and rest periods

8     cannot be subject to interruption and must be completely duty-free. Furthermore,

9     meal periods must be provided within the first five hours of work, and again before

10     the end of the tenth hour of work; and rest periods must be authorized and

11     permitted by the end of every fourth hour of work or major fraction thereof.

12     Defendants do not provide meal periods or authorize and permit rest periods that

13     are truly duty-free, not subject to interruption, and/or timely. Moreover,

14     Defendants have required Drivers to perform numerous assigned deliveries per

15     day according to time windows, strict schedules and other restrictions that

16     routinely preclude Drivers from taking timely meal and rest periods. Even when

17     the Drivers are able to steal away some kind of "break," it is subject to interruption

18     from Defendants' dispatch. For example, when Mr. Lim made his 8-10 hour

19     hospital delivery runs, the tight delivery windows precluded him from stopping to

20     rest at regular intervals to take compliant meal and rest breaks. During this whole

21     time, any "breaks" were subject to interruption by work-related calls from

22     Defendants' dispatchers.

23     26.    Defendants have relied entirely on the "independent contractor" label to deny

24 Plaintiff and the Class these basic protections guaranteed by the California Labor Code and the

25 applicable Wage Order.

26     27.    Plaintiff, Santiago Lim, brings this class action on behalf of himself and other

27 similarly situated individuals who personally made deliveries for Defendants in California, while

28 being classified as an independent contractor. Plaintiff seeks to represent other former and current

-8-

Drivers against Defendants for violating California wage and hour laws stemming from their misclassification of the employee Drivers as independent contractors. Plaintiff seeks injunctive and declaratory relief, restitution and compensation for all uncompensated work and unpaid wages (including unpaid premium wages), reimbursement for all expenses incurred as required by employment, liquidated and/or other damages as permitted by applicable law, penalties, interest, attorneys' fees, and costs.

28.    Plaintiff, on his own behalf and on behalf of all Class Members, brings this action pursuant to Labor Code §§ 201-203, 221, 223, 226.3, 226.7, 226.8 400-410, 432.5, 510, 512, 1182, 1174, 1194, 1197.1, and 2802; and California Code of Regulations, Title 8 §11090 §§ 7 & 11-12 (Wage Order No. 9). Plaintiff challenges Defendants' policies of: (1) misclassifying Drivers as independent contractors instead of employees; (2) failing to pay Plaintiff and the Class overtime and double time; (3) denying Plaintiff and the Class full compensation for all hours worked; (4) failing to reimburse Plaintiff and the Class for necessary and reasonable business expenses; (5) making unlawful deductions from Plaintiff's and the Class' wages; (6) failing to provide, authorize, permit and/or make available off-duty meal and rest periods to Plaintiff and the Class as required by California law; (7) failing to provide Plaintiff and the Class with accurate, itemized wage statements; (8) failing to timely pay Plaintiff and the Class full wages upon termination or resignation; and (9) maintaining unlawful non-compete clauses in its contracts with Plaintiff and the Class. Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the California Labor Code and the applicable IWC Wage Orders.

29.    Plaintiff, on behalf of himself and all others similarly situated, also brings this action pursuant to Business & Professions Code §§ 16600 et seq, and 17200-17208, for unfair competition due to Defendants' unlawful violations of the Labor Code and IWC Wage Orders, and for maintaining unlawful non-compete clauses. Plaintiff, on behalf of himself and all others similarly situated, seeks declaratory and injunctive relief, including restitution under §17203.

30.    Plaintiff, on behalf of himself and all others similarly situated, also requests reasonable attorneys' fees and costs pursuant to, inter alia, Labor Code §§ 225.5, 226, 226.7, 558, 1194, 1197, 2802; and Code of Civil Procedure § 1021.5.

CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc. et al.

## JURISDICTION AND VENUE

31.     The Court has jurisdiction over this class action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10.

32.     Additionally, this Court has jurisdiction over Plaintiff's and the Class' claims for injunctive relief, including restitution of earned wages, arising from Defendants' unfair competition under Business & Professions Code §§ 17203 and 17204.  The Court also has jurisdiction over Plaintiff's and the Class' claims for penalties in violation of the Labor Code pursuant to Business and Professions Code § 17202, as well as pursuant to the applicable Labor Code provisions.

33.     The Court has jurisdiction over Defendants because they are corporations authorized to do business in the State of California and are registered with the California Secretary of State. Defendants do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market through the advertising, marketing and sale of goods and services, to render the exercise of jurisdiction over Defendants by the California court consistent with traditional notions of fair play and substantial justice.

34.     Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5. Defendants employed Plaintiff and the other Drivers in this County, transact business in this County, and the events complained of in this Complaint occurred in this County.

## THE PARTIES

35.     Plaintiff and all of the proposed Class members as set forth below are current or former Drivers who personally made one or more deliveries for Defendants in California, while being classified as independent contractors at any time beginning four years before the filing of this Complaint.

36.     The class excludes the following:

i.     For any Class Member, any workweek during which the Class Member had more than one active second or indirect driver working on his or her routes.  In other words, this action does not seek to represent the small minority of Drivers who may have been running more than two vehicles (routes) for Defendants.  The

-10-

CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc., et al.

1   individuals who are part of the Class can be ascertained by Defendants' records,

2   including Defendants' proprietary database, the Enterprise Compliance System,

3   which keeps track of a Driver's indirect drivers and helpers, if any.

4   ii.   The Class also excludes any individuals who are already class members in the case

5   of *Lee v. Dynamex*, which alleges similar claims against the same defendants. The

6   class in the *Lee v. Dyanmex* case includes only individuals who returned timely

7   and complete questionnaires as part of the discovery process in that case. *See*

8   *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 919 (2018) (describing

9   class definition in *Lee v. Dynamex* case).

10   37.   Plaintiff, Santiago Lim, is a resident of Monrovia, California in the County of Los

11  Angeles. Plaintiff worked as a Driver for Defendants, transacting business on behalf of

12  Defendants in the County of Los Angeles, among other locations in Southern California between

13  approximately the Winter of 2010 and the Summer of 2016. For the duration of his employment

14  relationship with Defendants, Plaintiff made deliveries by himself and without any helpers.

15  Plaintiff is not a member of the class in the case of *Lee v. Dynamex*, nor did he submit a

16  questionnaire in that case.

17   38.   Defendant Transforce, Inc. is and at all relevant times has been engaged in the

18  business of delivery services in the State of California and has places of business in the County

19  of Los Angeles.

20   39.   Defendant TForce Logistics, LLC is and at all relevant times has been engaged in

21  the business of delivery services in the State of California and has places of business in the County

22  of Los Angeles.

23   40.   Defendant TForce Final Mile West, LLC is and at all relevant times has been

24  engaged in the business of delivery services in the State of California and has places of business

25  in the County of Los Angeles.

26   41.   Plaintiff does not know the true names and capacities of Defendants sued herein

27  as DOES 1-50, and therefore sues these Defendants by fictitious names. Plaintiff will amend this

28  Complaint to state the true names and capacities when ascertained. Plaintiff is informed and

1  believes and thereon alleges that each of the fictitiously named Defendants are responsible in
2  some manner for the occurrences and damages alleged herein, and that Plaintiff's damages as
3  hereinafter set forth were proximately caused by said Defendants.

4       42.    Throughout this Complaint, any reference to "Defendants," "Defendant," or
5  "Transforce" is intended to refer to all Defendants jointly.

6  **FACTUAL ALLEGATIONS**

7       43.    Plaintiffs incorporate herein by reference the allegations set forth above.

8       44.    During the relevant time period of this action, Defendants have employed, and
9  continue to employ, Drivers to provide delivery services. Their job duties include driving delivery
10  vehicles, loading and unloading delivery vehicles, physically retrieving goods from and
11  delivering goods to customer locations, and performing additional miscellaneous duties at the
12  direction of Defendants.

13  **A.    Defendants' Misclassification of Drivers as Independent Contractors**

14       45.    Defendants used to classify the Drivers as employees and pay them in accordance
15  with the California Labor Code and applicable Wage Orders. But in 2004, Defendants converted
16  all of their Drivers to so-called "independent contractors" after management concluded that such
17  conversation would generate economic savings for the company. This conversion involved a
18  process by which all Drivers had to sign standardized contracts purporting to establish their so-
19  called "independent contractor" status.

20       46.    Defendants' practice of requiring Drivers to sign standardized contracts labeling
21  them as so-called "independent contractors" in order to work for Defendants persists to this day.
22  The Drivers are predominantly individual laborers who have no independent "company" or
23  "business" but are forced to proceed with bare minimum formalities during the onboarding
24  process with Defendants.

25       47.    The Drivers generally do not market their services, but rather depend on
26  Defendants for all the customers, packages, and deliveries. Not surprisingly, Defendants forbid
27  their Drivers from diverting any delivery order received through or on behalf of Defendants to a
28  competitive delivery service.

CLASS ACTION COMPLAINT

*Santiago Lim, et al v. Transforce, Inc., et al*

48. Although Defendants purport to allow Drivers to hire other persons to make deliveries and/or to provide help, the vast majority of Drivers have only one vehicle and work alone.

49. For instance, Plaintiff worked for Defendants by himself, without hiring any other individual or using more than one vehicle at a time to make deliveries, over the course of his approximate six-year tenure with the company. And, as discussed herein, Plaintiff is not seeking to represent the small minority of individuals who have more than one second driver and/or run more than two routes for Defendants.

50. Even for the small minority of Drivers who do get help from other workers, Defendants restrict their ability to operate as an independent business by setting standards for who may work as a second driver or helper. Defendants require that all second drivers and helpers be registered in its electronic database and further require that they approve of any second drivers or helpers that Drivers use. And, Defendants retain, and have often exercised the right to terminate second drivers and helpers.

51. Defendants' "independent contractor" designation is merely a label designed to evade the obligations of an employer, not a reflection that the Drivers are customarily engaged in an independently established trade. *Dynamex Operations W. v. Superior Court* (2018) 4 Cal. 5th 903, 962 ("A company that labels as independent contractors a class of workers who are not engaged in an independently established business in order to enable the company to obtain the economic advantages that flow from avoiding the financial obligations that a wage order imposes on employers unquestionably violates the fundamental purposes of the wage order. The fact that a company has not prohibited or prevented a worker from engaging in such a business is not sufficient to establish that the worker has independently made the decision to go into business for himself or herself.").

52. Despite labeling the Drivers as "independent" businesses, Defendants retain the right to exercise extensive control over the way the Drivers perform their deliveries. Among other things, Defendants retain the right to control the Drivers' delivery assignments, deadlines, customers, equipment, appearance, pay rate, insurance, helpers, and other details of the job.

1  Defendants also retain the right to terminate the Drivers without cause, just like an at-will
2  employee.

3       53.    Defendants assign the Drivers their deliveries and reserve the right to control the
4  number and nature of the deliveries they assign. Defendants use a proprietary mobile application
5  to transmit delivery assignments, delivery deadlines, and other instructions. Defendants require
6  the Drivers to complete all their assigned deliveries on the day of the assignment and expect that
7  Drivers will follow all instructions transmitted through the proprietary mobile application.
8  Defendants also require that their Drivers comply with specific directives regarding delivery
9  times, the sequence of stops, and customer service obligations, among other customer
10 specifications, based on covenants negotiated between Defendants and their customers
11 (negotiations that, of course, exclude the Drivers).

12      54.    Defendants determine which of its customers the Drivers will serve, while
13 generally prohibiting the Drivers from soliciting a relationship with any of them. The common
14 contracts that Defendants require the Drivers to sign also contain a "non-compete" clause
15 forbidding the Drivers from diverting any delivery order received through or on behalf of
16 Defendants to a competitive delivery service.

17      55.    Defendants also impose a set of uniform "Standard Operating Procedures" on the
18 drivers, which promulgate rules to follow regarding vehicle safety, communications with
19 dispatch, communications with third parties, insurance requirements, loss reduction, coaching,
20 attitude, reporting and monitoring, compensation, and deductions from pay, among other rules.

21      56.    Defendants have a nationwide Compliance Department tasked with ensuring that
22 Drivers meet various regulatory requirements. The Compliance Department monitors whether
23 Drivers' Carrier Safety Administration (CSA) scores meet regulatory requirements, information
24 Defendants use at their discretion in determining whether to terminate Drivers. Defendants retain
25 the discretion to terminate Drivers based on concerns regarding safety scores, even if the scores
26 are not so low as to trigger a response from regulatory authorities.

27      57.    Defendants require that Drivers purchase a minimum level of insurance naming
28 Defendants as an additional insured. The insurance requirements are set by Defendants based on

-14-

CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc., et al.

1   the insurance policy they separately negotiate with their carrier, not on the minimum legal

2   requirements or the Drivers' choice.

3       58.    Defendants further control how Drivers perform their work by generally requiring

4   them to wear uniforms bearing Defendants' name and corporate logo, the cost of which is

5   deducted directly from the Drivers' paychecks.

6       59.    Defendants have frequently punished Drivers for turning down assignments and

7   attempting to negotiate rates by withholding future work. This is a perennial threat because

8   Defendants are the gatekeepers of the customers and delivery assignments, making the Drivers

9   dependent on the company for their work. And, the Drivers are no different than at-will employees

10   because Defendants have the right to terminate them without cause. This too hangs over the

11   Drivers' heads, working to ensure that they fall in line with Defendants' requirements.

12       60.    The Drivers' job of making deliveries to the locations of Defendants' customers is

13   an integral part of Defendants' same-day delivery business. No specialized skills are required for

14   the job.

15       61.    Defendants' business is the quintessential same-day delivery business. Defendants

16   offer their customers state-of-the-art routing, GPS, and scanning technology to facilitate the

17   deliveries performed by the Drivers. As a general matter, Defendants obtain the customers for the

18   deliveries, set the rate that the customers will be charged, notify the Drivers of where to pick up

19   and deliver the packages, track the packages, and require the Drivers to use their own tracking

20   and recordkeeping system.

21       62.    Defendants' delivery business could not function without its labor force of Drivers.

22   The Drivers' work of making deliveries is firmly within the usual course of Defendants' delivery

23   business.

24       63.    As just one illustration of Defendants' unlawful misclassification scheme:

25   Plaintiff, Santiago Lim, worked a grueling 6-day-a-week schedule performing assigned deliveries

26   for Defendants on their Red Cross account in the County of Los Angeles.  Mr. Lim had to arrive

27   early in the morning to be available for delivery assignments. Upon arrival, he had to go to

28   Defendants' office next to the Red Cross facility, where Defendants' dispatchers would inspect

-15-

1  him and tell him to put on his uniform bearing Defendants' corporate name and logo if he hadn't

2  already. Thereafter, he would pick up and deliver medical supplies and blood to hospitals

3  throughout Southern California, pursuant to Defendants' assigned delivery schedules and

4  deadlines.

5         64.     Mr. Lim's delivery work was dependent on Defendants' assignments.  For

6  example, Mr. Lim might be assigned to a string of deliveries to hospitals in the San Fernando

7  Valley, which could take 8-10 hours to complete alone.  To make ends meet and to avoid being

8  punished with reduced work in the future, Mr. Lim would have to complete multiple additional

9  delivery runs per day, which routinely took him into the wee hours of the morning. Indeed, it was

10  common for Mr. Lim to arrive at the Red Cross location at 7 a.m., only to return home at 2 a.m.

11  the next morning.

12       **B.**    **Defendants' Failure to Pay Overtime Compensation**

13         65.     Drivers routinely work long days well in excess of 8 hours just to finish their day's

14  assigned deliveries, and routinely work more than 5 days and more than 40 hours per week. Yet,

15  Defendants' standardized compensation schedules pay on a piece rate basis (as discussed above)

16  and do not include any premiums for overtime.

17       **C.**    **Defendants Failed to Reimburse Drivers for Defendants' own Business Costs**

18         66.     As a result of misclassifying Drivers as independent contractors, Defendants

19  passed on many of costs of running their business to Drivers, who must cover Defendants' own

20  business costs out of their own pockets, including fuel, insurance, tires, vehicle maintenance,

21  vehicle repairs, and tools, among other costs.

22         67.     During some weeks, these expenses are so high in comparison to the Drivers'

23  actual earnings that they lose money or remain on the brink of losing money.

24       **D.**    **Defendants Took Deductions from Drivers' Paychecks**

25         68.     Defendants subject all Drivers to the same categories of deductions to cover certain

26  ordinary business expenses of Defendants, including, among others, uniforms, required insurance

27  coverage through Defendants' own vendor, Defendants' proprietary mobile application for

28  assigning deliveries, physical examinations, claims for lost or damaged items, and service and

-16-

CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc., et al.

1  other merchandise claims granted to customers, among numerous other items.

2  **E.   Defendants' Failure to Provide Off-Duty Meal Periods**

3  69.     Defendants fail to provide the Drivers an opportunity to take off-duty meal periods

4  of at least 30 minutes by each 5-hour segment of work.  The delivery schedules Defendants assign

5  to their Drivers often simply do not permit an opportunity to take these off-duty meal periods,

6  because they require Drivers to meet specific delivery time windows.  Moreover, Defendants'

7  delivery assignments do not provide designated windows of time in which Drivers may take meal

8  breaks.  If Drivers stop to take some kind of break, they are subject to being called by Defendants'

9  dispatchers or managers to make a delivery, being assigned less work, having their contracts

10  terminated, or other forms of discipline.  As a result of these policies, the Drivers rarely have 30

11  minutes completely relieved of duty, much less an opportunity to take truly off-duty meal periods

12  of at least 30 minutes by the fifth and tenth hours of work.  Instead, they typically eat while driving

13  or otherwise on the run.

14  **F.   Defendants' Failure to Authorize and Permit or Pay for Rest Periods**

15  70.     Defendants also fail to authorize or permit off duty, paid rest periods of at least 10

16  minutes of rest time for every 4 hours of work or major fraction thereof.  Like meal periods, the

17  arrangement of the great number of deliveries and delivery windows, and the need to remain

18  vigilant for customers routinely do not permit the Drivers an opportunity to stop and rest, while

19  off-duty, for 10 minutes during each 4 hour work period or major fraction thereof.  Even when a

20  Driver manages to catch a moment of rest, this downtime is subject to interruption.  There are no

21  off-duty breaks.  Moreover, Defendants do not actually authorize or permit rest periods of any

22  kind, much less off-duty rest periods for every 4 hour work period or major fraction thereof, or

23  paid rest periods, as the law requires.

24  71.     Additionally, Defendants' piece rate compensation system does not include any

25  separate compensation for rest periods, even assuming they were authorized and permitted.

26  **G.   Defendants' Failure to Pay for Hours Worked Not Covered by the Piece Rate**

27  72.     Defendants pay the Drivers according to a uniform compensation scheme,

28  whereby Defendants set pay rates using a computer algorithm and methodology taking into

account the amount paid by the retail client to Defendants, who enter the rate into its database via an "auto-calculation." Then, the algorithm and methodology sets a flat rate, which can take the form of a per-delivery rate, a per-item rate, or a percentage of what was charged by the customer. Any alteration in this pre-determined rate is a business decision ultimately made by Defendants.

73.     However, under Defendants' compensation system, Drivers receive no pay for an array of activities that Defendants require them to perform before and after deliveries. Such activities include, among others, reviewing route assignments, mapping destinations, inspecting vehicles, fueling vehicles, completing paperwork, waiting on customers, waiting on delivery assignments, retrieving merchandise from Defendants' locations, loading and unloading vehicles, and returning equipment and undelivered merchandise to Defendants' location at the end of the workday.

**H.     Defendants' Failure to Maintain Adequate Employment Records**

74.     Defendants also fail to maintain documentation of the actual hours worked each day by Drivers, all wages and piece rate units earned and meal periods received.

**I.     Defendants' Failure to Provide Accurate Itemized Wage Statements**

75.     Wage statements provided to Drivers by Defendants do not show, among others, gross wages, total hours worked, number of piece-rate units earned, all applicable piece and/or hourly rates, and net wages earned.  Defendants' failure to provide this information has been knowing and intentional, and has injured the Class Members, who must bring this action to obtain correct wage information and the correct designation of who is responsible as an employer for their working conditions and pay.

**J.     Defendants' Failure to Pay All Wages Due Upon Termination of Employment**

76.     Defendants fail, upon termination of employment, to pay Drivers all accrued compensation including, among others, repayment of all unlawful deductions from wages; reimbursement of expenses; payment of overtime compensation; wages owed to Drivers for performing various unpaid common tasks; and premium wages for missed and noncompliant meal and rest periods.

**K.     Defendants' Willful Violations of the California Labor Code**

-18-

1     77.    Defendants knew or should have known that Drivers were Defendants' employees

2  under California law; were entitled to reimbursement for all work-related expenditures or losses

3  incurred by Drivers in direct consequence of their work for Defendants and to other benefits and

4  privileges, which Drivers are entitled to under the California Labor Code and Wage Order No. 9.

5  Among other reasons, Defendants were put on notice of their unlawful business model by the

6  Supreme Court's rdecision addressing it, *Dynamex Operations W. v. Superior Court* (2018) 4 Cal.

7  5th 903, 964. Nonetheless, Defendants continue to maintain the same business model to this day.

8

## CLASS ACTION ALLEGATIONS

9     78.    Pursuant to Code of Civil Procedure § 382, this action is brought and may be

10  properly maintained as a class action. There is an ascertainable class and a well-defined

11  community of interest across the class members.

12    **A.    Class Definition**

13     79.    Plaintiff brings this suit as a class action on behalf of himself and all others

14  similarly situated. The Class that Plaintiff seeks to represent is composed of and defined as

15  follows:

16       "All current or former Drivers who personally made one or more deliveries for
        Defendants in California, while being classified as independent contractors at
17       any time beginning four years before the filing of this Complaint."

18       The Class excludes the following two categories:

19     i.    For any Class Member, any workweek during which the Class Member
20        had more than one active second or indirect driver working on his or her
        routes. In other words, this action does not seek to represent the small
21        minority of Drivers who may have been running more than two vehicles
        (routes) for Defendants. The individuals who are part of the Class can be
22        ascertained by Defendants' records, including Defendants' proprietary
        database, the Enterprise Compliance System, which keeps track of a
23        Driver's indirect drivers and helpers, if any.

24     ii.   The Class also excludes any individuals who are already class members in
25        the case of *Lee v. Dynamex*, which alleges similar claims against the same
        defendants. The class in the *Lee v. Dyanmex* case includes only individuals
26        who returned timely and complete questionnaires as part of the discovery
        process in that case. *See Dynamex Operations W. v. Superior Court*, 4 Cal.
27        5th 903, 919 (2018) (describing class definition in *Lee v. Dynamex* case).

28    **B.    The Proposed Class is Ascertainable**

02/22/2019

-19-

80.     The proposed Class is ascertainable because it is comprised of a discreet, well defined and objectively identifiable group. The Class members are easily identifiable from Defendants' business records, including Defendants' Enterprise Compliance System database. This database also identifies the individuals who worked with or assisted Class Members as second (indirect) drivers or helpers, including the time during which they worked with the Class Member, and the particular Class Member with whom they were affiliated.

**C.     The Proposed Class is Too Numerous to Join**

81.     Defendants have employed at least one hundred Drivers in California within four years preceding the filing of this Complaint.  Class members are therefore far too numerous to be individually joined in this lawsuit.

**D.     Common Issues of Fact and Law Predominate**

82.     Common questions of law and/or fact exist as to the members of the Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Class.  The common questions include the following:

    i.    Whether the Drivers are independent contractors or employees under applicable law;

    ii.    Whether the Drivers are free from Defendants' control and direction in the performance of their job;

    iii.    Whether the Drivers' delivery work is within the usual course of Defendants' business;

    iv.    Whether the Drivers are customarily engaged in an independently established business;

    v.    Whether the Drivers are entitled to be reimbursed for Defendants' business expenses and deductions;

    vi.    Whether Defendants pay the Drivers overtime or double time wages for performing work over eight (8) hours per day, over twelve (12) hours per day, and/or over forty (40) hours per week;

-20-

vii.   Whether Defendants fail to provide the drivers an opportunity to take timely, off-duty meal periods that are not subject to interruption;

viii.   Whether Defendants fail to authorize and permit timely, off-duty rest periods that are not subject to interruption;

ix.   Whether Defendants have failed to pay meal and rest period premiums when meal and rest periods were not provided.

x.   Whether the paychecks provided to the Drivers in connection with their compensation contain all the elements mandated for accurate itemized wage statements under Cal. Labor Code § 226(a);

xi.   Whether the non-compete clause in Defendants' contracts with the Drivers unlawfully restrain the drivers from engaging in a lawful profession, trade or business.

xii.   Whether Drivers who had their employment relationship with Defendants terminated are entitled to penalty wages for Defendants' failure to timely pay all outstanding amounts of compensation owed upon termination of the employment relationship;

xiii.   Whether Defendants' policies and practices have resulted in violation of one or more of the Labor Code Provisions cited herein;

xiv.   Whether the non-compete clauses in Defendants' common contracts with the Drivers violate Cal. Labor Code § 432.5 and/or California Business and Professions Code §§ 16600, et seq.;

xv.   Whether Defendants' policies and practices are unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code §§17200, *et seq.*;

xvi.   The injunctive and/or monetary relief to which Plaintiff and the Class may be entitled as a result of the violations alleged herein.

**E.    Plaintiff's Claims are Typical**

83.   Plaintiff's claims are typical of the claims of the Class.  Defendants' common

-21-

1  course of conduct in misclassifying all of the Drivers as independent contractors caused Plaintiff

2  and the proposed Class to sustain the same or similar injuries and damages.  Plaintiff's claims are

3  thereby representative of and co-extensive with the claims of the proposed Class.

4        **F.**    **Plaintiff and his Counsel Will Adequately Represent the Class**

5        84.    Plaintiff is an adequate representative of the Class because he is a member of the

6  Class and his interests do not conflict with the interests of the members of the Class he seeks to

7  represent.  Plaintiff has retained counsel competent and experienced in complex class action

8  litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff and his counsel will

9  fairly and adequately protect the interests of members of the Class.

10        **G.**    **Class Action Treatment is Superior**

11        85.    The class action is superior to other available means for the fair and efficient

12  adjudication of this dispute.  The injury suffered by each member of the Class, while meaningful

13  on an individual basis, is not of such magnitude as to make the prosecution of individual actions

14  against Defendants economically feasible.  Furthermore, individualized litigation increases the

15  delay and expense to all parties and the court system presented by the legal and factual issues of

16  the case.  In contrast, the class action device presents far fewer management difficulties and

17  provides the benefits of single adjudication, economy of scale, and comprehensive supervision

18  by a single court, and avoids the problem of inconsistent judgments.

19  **FIRST CAUSE OF ACTION**

20  **Failure to Pay Overtime Compensation**<br>**California Labor Code §§ 510, 515.5, 1194, and 1198 *et seq*., and IWC Wage Order No. 9.**

21        86.    Plaintiff hereby realleges and incorporates by reference the allegations set forth

22  above as if fully set forth herein.

23        87.    California Labor Code §§ 510 and 1198, and IWC Wage Order No. 9, § 3, provides

24  that employees in California shall not be employed more than eight (8) hours in any workday or

25  forty (40) hours in any workweek unless they receive additional compensation beyond their

26  regular wages in amounts specified by law.

27        88.    Defendants have failed to pay Plaintiff, and other members of the Class, overtime

28  compensation for the hours they worked in excess of the maximum hours permissible by law

1   under California Labor Code §§ 510 and 1198, and IWC Wage Order No. 9, § 3.  Defendants

2   require and/or suffer and permit Plaintiff and other members of the Class to work overtime hours.

3       89.    Defendants' failure to pay additional, premium rate compensation to Plaintiff and

4   members of the Class for their overtime hours worked has caused Plaintiff and Class members,

5   and continues to cause many Class Members, to suffer damages in amounts which are presently

6   unknown to them but which exceed the jurisdictional threshold of this Court and which will be

7   ascertained according to proof at trial.

8       90.    Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiff and other

9   members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid

10   every pay period.

11       91.    As a direct and proximate result of the unlawful acts and/or omissions of

12   Defendants, Plaintiff and Class members have been deprived of overtime and double time

13   compensation in an amount to be determined at trial.  Plaintiffs and other members of the Class

14   request recovery of overtime and double time compensation according to proof, interest,

15   attorney's fees and costs of suit pursuant to California Labor Code §§1194(a), 554, 1194.3 and

16   1197.1, as well as the assessment of any statutory penalties against Defendants, in a sum as

17   provided by the California Labor Code and/or other statutes.

18   **SECOND CAUSE OF ACTION**
**Reimbursement of Business Expenses**

19   **California Labor Code §§ 2800, 2801, 2804**

20       92.    Plaintiff hereby realleges and incorporates by reference the allegations set forth

21   above as if fully set forth herein.

22       93.    At all relevant times, Plaintiff, and members of the Class, were employees covered

23   by Labor Code §§ 2800, 2802, and 2804.

24       94.    California Labor Code § 2800 provides: "An employer shall in all cases indemnify

25   his employee for losses caused by the employer's want of ordinary care."

26       95.    California Labor Code § 2802 provides "An employer shall indemnify his or her

27   employee for all necessary expenditures or losses incurred by the employee in direct consequence

28   of the discharge of his or her duties, or of his or her obedience to the directions of the employer,

1    even though unlawful, unless the employee, at the time of obeying the directions, believed them

2    to be unlawful."

3        96.     During the applicable statutory period, Plaintiff and the Class members incurred

4    necessary expenditures and losses in direct consequence of the discharge of their employment

5    duties and in obedience to the directions of Defendants, for which Defendants did not reimburse

6    Plaintiff and Class members, including but not limited to: (1) fuel, tires, vehicle maintenance,

7    vehicle repairs, vehicle washes, and insurance in connection with their operation of the vehicles

8    used to perform the deliveries; (2) expenditures in connection with tools and supplies required by

9    Defendants for the Class members to perform delivery services; (3) automobile insurance and

10    occupational accident insurance to cover accidental injury to Class members during the course

11    and scope of their employment with Defendants, which constitutes workers' compensation

12    insurance, in violation of California Labor Code § 3751(a); (4) Defendants' proprietary mobile

13    application required for delivery assignments, and to allow Defendants to communicate with the

14    Drivers and track their progress; and (5) claims for lost or damaged items, and service and

15    merchandise claims granted to customers, among other necessary expenditures.

16        97.     Labor Code §2804 provides: "Any contract or agreement, express or implied,

17    made by any employee to waive the benefits of this article or any part thereof, is null and void,

18    and this article shall not deprive any employee or his personal representative of any right or

19    remedy to which he is entitled under the laws of this State."

20        98.     Thus, regardless of the agreement signed by all the Class members, Defendants

21    have engaged in illegal expense-shifting practices by failing to fully reimburse Plaintiff and the

22    members of the Class for necessary business-related expenses and costs.

23        99.     Under California Labor Code §§ 2800, 2802, and 2804, Plaintiff and Class

24    Members are entitled to recover their unreimbursed expenditures and losses, interest thereon,

25    attorney's fees, and costs of suit, in an amount to be proven at trial.

26                       **THIRD CAUSE OF ACTION**
**Unlawful Deductions from Wages**

27    **California Labor Code §§ 204, 218, 218.6, 221, 223, and 400-410; California Civil Code**
**§3287(a); IWC Wage Order No. 9, and Title 8 C.C.R. §11090, ¶ 8.**

28

       100.     Plaintiff hereby realleges and incorporates by reference the allegations set forth

1   above as if fully set forth herein.

2       101.   At all relevant times, Plaintiff, and members of the Class, were employees covered

3   by Labor Code §§ 204, 218, 218.6, 221, 223, and 400-410, IWC Wage Order 9-2001, and Title 8

4   C.C.R. §11090, ¶ 8.

5       102.   Pursuant to Labor Code § 204, Labor Code §221, and Wage Order 9-2001,

6   Plaintiff, and other members of the Class, were entitled to receive on regular paydays all wages

7   earned for the pay period corresponding to the payday without any deductions, except for those

8   legally permissible deductions authorized in writing or required by law.

9       103.   Pursuant to Labor Code § 223, it is unlawful for employers to secretly pay a lower

10   wage scale while purporting to pay the wage scale designated by statute or by contract.

11       104.   Pursuant to Labor Code §§ 400-410, employers are not entitled to a setoff of debts

12   owed by their employees against wages due those employees on termination.

13       105.   IWC wage order No. 9, §8, and Title 8 of the California Code of Regulations

14   §11090, ¶ 8, provide that the only circumstances under which an employer can make a deduction

15   from an employee's wage are: 1) cash shortage; 2) breakage; or 3) loss of equipment if the

16   employer can show the shortage, breakage, or loss was the result of the employee's gross

17   negligence or dishonest or willful act.

18       106.   Under these statutes, regulations and California's fundamental public policy

19   protecting wages and wage scales, employers cannot subject employees to unanticipated

20   reductions in their wages. Nor can they make employees the insurers of their employer's business

21   losses, or otherwise pass the ordinary business losses of the company onto the employee.

22       107.   Defendants have violated California Labor Code §§ 221, 223, and 400-410, and

23   IWC wage order No. 9, §8, by unlawfully taking deductions from Plaintiff and Class members'

24   compensation to cover certain ordinary business expenses of Defendants, including but not

25   limited to uniforms, required insurance coverage through Defendants' own vendor, Defendants'

26   proprietary mobile application for assigning deliveries, physical examinations, claims for lost or

27   damaged items, and service and other merchandise claims granted to customers, among numerous

28   other items.

-25-

CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc., et al.

1     108.   Because Defendants have taken unlawful deductions from the Class members'

2 compensation, they are liable to Plaintiff and Class members for the compensation that should be

3 paid, 'but for' the unlawful deductions under California Labor Code §§221, 223 and 400-410,

4 IWC Wage Order No. 9, and Title 8 of the California Code of Regulations §11090.  Pursuant to

5 Labor Code §218, Plaintiff, and other members of the Class, are entitled to recover the full amount

6 of the wages earned but not paid every pay period.

7     109.   Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiff and other

8 members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid

9 every pay period.

10     110.   As a result of Defendants' unlawful deductions made from wages and refusal to

11 pay the Plaintiff and Class Members, Defendants are liable for penalties, reasonable attorneys'

12 fees, and costs of suit.

13
### FOURTH CAUSE OF ACTION
**Failure to Provide Off Duty and Compliant Meal Periods, or Compensation in Lieu
California Labor Code §§ 226.7 and 512; and Title 8 C.C.R. §11090 ¶¶ 7 & 11**

15     111.   Plaintiff hereby realleges and incorporates by reference the allegations set forth

16 above as if fully set forth herein.

17     112.   California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of

18 Regulations § 11090, ¶ 11 require Defendants to provide meal periods to Plaintiffs and members

19 of the proposed Class.  California Labor Code §§ 226.7 and 512, and Title 8 of the California

20 Code of Regulations § 11090, § 11 prohibit employers from employing an employee for more

21 than five hours without a meal period no less than 30 minutes and for more than 10 hours without

22 a second meal period.  Unless the employee is relieved of all duty during the 30 minute meal

23 period, the employee is considered "on-duty" and the meal or rest period is counted as time

24 worked.

25     113.   Defendants do not provide the Class members with meal periods during which

26 they are completely relieved of duty for at least 30 minutes by the fifth hour of work and again

27 by the tenth hour of work.  To the contrary, Drivers are on duty and on call throughout their work

28 day.

1        114.    As an additional basis for Defendants' violation of the meal period requirements,

2   the quantity of deliveries, time needed to drive between deliveries, and windows of time mandated

3   by Defendants' delivery assignments and enforced by Defendants' managers and dispatchers,

4   actually preclude the Class members from the opportunity to stop driving and take off-duty meal

5   periods for 30 minutes or more by the fifth or tenth hour of work.

6        115.    Rather, the Class members regularly work long days, well in excess of 8 hours and

7   often in excess of 12 hours, without the opportunity to take a meal period during which they are

8   relieved of all duty.

9        116.    Because the Class members must adhere to Defendants' demanding schedules to

10   avoid having their contracts terminated or receiving reduced work assignments, they do not have

11   an opportunity to take an off-duty break during their long shifts. Instead, Class members routinely

12   must eat while they drive, eat while they work, or forego eating meals entirely until the day's

13   duties are complete.

14        117.    Title 8 of the California Code of Regulations §11090, ¶ 7 requires Defendants to

15   keep time records of meal periods in order to satisfy the requirements of California's meal period

16   laws and regulations. Defendants' records or lack thereof demonstrate that they have not provided

17   off duty meal periods as required by applicable law.

18        118.    Defendants have failed to perform their obligations to provide Plaintiff and Class

19   members' off-duty meal periods. Defendants also have failed to pay Plaintiff and Class members

20   one hour of pay for each day that one or more off-duty meal periods were not provided.

21   Defendants' conduct described herein violates California Labor Code §§226.7 and 512 and Title

22   8 of the California Code of Regulations §11090. Therefore, Plaintiff and members of the putative

23   Class are entitled to compensation for Defendants' failure to provide meal periods, plus interest,

24   expenses, and costs of suit pursuant to California Labor Code §§226.7(b) and Title 8 of the

25   California Code of Regulations §11090.

26                             **FIFTH CAUSE OF ACTION**

**Failure to Provide Paid, Off Duty or Compliant Rest Periods,**
27                 **and/or Compensation in Lieu Thereof**

**California Labor Code §§ 226.7 and Title 8 C.C.R. § 11090 ¶ 12**
28

        119.    Plaintiff hereby realleges and incorporates by reference the allegations set forth

-27-

1 | above as if fully set forth herein.

2 | 120.    California Labor Code §226.7 and Title 8 of the California Code of Regulations §

3 | 11090, ¶ 12 require Defendants to authorize and permit rest periods to Plaintiff and members of

4 | the proposed Class at the rate of ten minutes net rest time per four hours or major fraction thereof.

5 | 121.    Defendants simply do nothing to authorize and permit the Class members rest

6 | periods during which they are completely relieved of duty for at least 10 minutes during each 4

7 | hour work period or major fraction thereof.  To the contrary, even if Drivers are able to steal away

8 | some kind of "rest" time, they are still on duty and on call throughout their work day, subject to

9 | being called upon to perform deliveries.

10 | 122.    As an additional basis for Defendants' violation of the rest period requirements,

11 | the Class members regularly work well in excess of 8 hours in a day, and often far more, without

12 | any realistic opportunity to rest for even ten minutes during a four hour period or major fraction

13 | thereof.  Defendants' policy is for the Class members to make deliveries in a timely fashion,

14 | according to delivery assignments mandating windows of time in which each delivery must be

15 | made.  The arrangement of the delivery windows, the distances in between deliveries, and the

16 | need to remain vigilant for customers routinely do not permit the Class members an opportunity

17 | to stop and be completely removed from duty to rest for at least 10 minutes during each 4 hour

18 | work period or major fraction thereof.   Moreover, Defendants fail to budget any time into the

19 | routes for rest breaks.

20 | 123.    As still another separate and independent basis for the denial of rest periods,

21 | Defendants' piece rate pay system includes no separate pay for rest periods in violation of

22 | California law, assuming rest periods were permitted, authorized and taken.

23 | 124.    Under both California Labor Code § 226.7 and Title 8 of the California Code of

24 | Regulations §1190, ¶ 12, an employer must pay an employee who was denied a required rest

25 | period 1 hour of pay at the employee's regular rate of compensation for each workday that the

26 | rest period was not provided.

27 | 125.    At all relevant times herein, Defendants have failed to perform their obligations to

28 | authorize and permit Plaintiff and Class Members to take rest periods as set forth above.

-28-

CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc., et al.

1    Defendants also failed to pay wages for rest periods separately from the piece rate.  Defendants

2    also have not paid Plaintiff and Class members one (1) hour of pay for each day that they were

3    not authorized or permitted to take all the paid, off duty rest period to which they were entitled.

4    Defendants' conduct described herein violates California Labor Code §§ 226.7 and Title 8 of the

5    California Code of Regulations §11090.  Therefore, Plaintiff and members of the putative Class

6    are entitled to compensation for Defendants' failure to authorize, permit and pay for rest periods,

7    plus interest, and costs of suit pursuant to California Labor Code §§ 226.7(b), and Title 8 of the

8    California Code of Regulations § 11090.

9                                     **SIXTH CAUSE OF ACTION**

10   **Failure to Pay Regular Rates for All Hours Worked in Violation of
California Labor Code §, 204, and 221-223**

11   125.   Plaintiff hereby realleges and incorporates by reference the allegations set forth

12   above as if fully set forth herein.

13   126.   California Labor Code §200 defines wages as "all amounts for labor performed by

14   employees of every description, whether the amount is fixed or ascertained by the standard of

15   time, task, piece, commission basis or other method of calculation."

16   127.   California Labor Code §204 provides that employers must compensate employees

17   for all hours worked "twice during each calendar month, on days designated in advance by the

18   employer as the regular paydays."

19   128.   California Labor Code §§221-223 prohibit employers from withholding and

20   deducting wages, or otherwise artificially lowering the wage scale of an employee.

21   129.   Defendants also maintain a policy of paying the Class members nothing for an

22   array of activities it requires them to perform before and after performing deliveries.  These

23   activities include: reviewing delivery assignments and mapping destinations; retrieving packages,

24   loading and unloading vehicles; filling out paperwork; returning delivery equipment and

25   undelivered merchandise to Defendants' locations at the end of the workday; and other

26   uncompensated work.  This work is performed off the clock.

27   130.   Defendants do not compensate Plaintiff and Class members for these work

28   activities, yet Defendants suffer and permit Plaintiff and Class members to perform them, and

1  exercise control over the way they are performed.

2      131.   The substantial time the Class members regularly spend on these work activities

3  is compensable working time and Defendants are required by law to pay the Class members for

4  it. Nevertheless, Defendants have not paid Plaintiff and the members of the Class for such

5  uncompensated work, while purporting to pay the designated wage scale. Defendants' failure to

6  compensate the Class members for this time results in the denial of the Class members' wages for

7  those periods of work, in violation of the Labor Code provisions cited herein.

8      132.   Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiff and other

9  members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid

10  every pay period.

11      133.   As a proximate result of these violations, Defendants have damaged Plaintiff and

12  the Class in amounts to be determined according to proof at trial.

13      134.   Defendants are liable to Plaintiff and the Class for unpaid compensation, penalties,

14  interest and attorneys' fees and costs set forth below.

15  **SEVENTH CAUSE OF ACTION**

16  **Failure to Keep Accurate Payroll Records**
**California Labor Code §§ 1174 & 1174.5**

17      135.   Plaintiff hereby realleges and incorporates by reference the allegations set forth

18  above as if fully set forth herein.

19      136.   California Labor Code §1174 requires Defendants to maintain payroll records

20  showing the actual hours worked daily by Plaintiffs and the Class members.

21      137.   Defendants knowingly, intentionally, and willfully have failed to maintain payroll

22  records showing the actual hours worked by Plaintiff and the Class members as required by

23  California Labor Code §1174 and in violation of §1174.5. As a direct result of Defendants' failure

24  to maintain payroll records, Plaintiff and the Class members have suffered actual economic harm

25  as they have been precluded from accurately monitoring the number of hours they have worked

26  and thus seeking all accrued minimum wages, agreed upon wages, and overtime pay. As a direct

27  and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and the Class

28  members are entitled to recover damages and civil penalties in an amount to be determined at

1  trial, plus interest, attorneys' fees, and costs of suit.

2  ### EIGHTH CAUSE OF ACTION
### Failure to Provide Accurate, Itemized Wage Statements
3  ### California Labor Code § 226(a)

4  138.   Plaintiff hereby realleges and incorporates by reference the allegations set forth
5  above as if fully set forth herein.

6  139.   California Labor Code §226(a) provides that every employer must furnish each
7  employee with an accurate itemized wage statement, in writing, showing nine pieces of
8  information, including: 1) gross wages earned; 2) total hours worked by the employee; 3) the
9  number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece
10  rate basis; 4) all deductions, provided that all deductions made on written orders of the employee
11  may be aggregated and shown as one item; 5) net wages earned; 6) the inclusive dates of the
12  period for which the employee is paid; 7) the name of the employee and the last four digits of his
13  or her social security number or an employee identification number other than a social security
14  number; 8) the name and address of the legal entity that is the employer; and 9) all applicable
15  hourly rates in effect during the pay period and the corresponding number of hours worked at
16  each hourly rate by the employee.

17  140.   California Labor Code §226(e)(1) provides that an employee suffering an injury
18  as a result of a knowing and intentional failure to provide a statement accurately itemizing the
19  information set forth in Labor Code §226(a), then the employee is entitled to recover the greater
20  of all actual damages or fifty-dollars ($50.00) for the initial violation and one-hundred dollars
21  ($100.00) for each subsequent violation, up to a maximum of four-thousand dollars ($4,000.00).

22  141.   California Labor Code §226(e)(2) provides that an employee is deemed to suffer
23  injury if the employer fails to provide wages statements that show, among other items, the total
24  hours worked by the employee, the  number of piece-rate units earned and any applicable piece
25  rate, all deductions, inclusive dates of the period for the which the employee is paid, and all
26  applicable hourly rates in effect during the pay period.

27  142.   Plaintiffs' and the Class members' wage statements do not comply with these
28  requirements.  Defendants knowingly, intentionally, and willfully failed to furnish Plaintiff and

-31-

CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc., et al.

1    Class members with timely, accurate, itemized statements showing, among others, total hours

2    worked and the actual rates of pay.

3         143.    Plaintiff and the Class Members have been injured by Defendants' violation of

4    California Labor Code §226(a) because they have been denied their legal right to receive and their

5    protected interest in receiving, accurate, itemized wage statements.  They could not promptly and

6    easily ascertain from the wage statement alone the total number of hours worked, and the actual

7    pay rates in effect during each pay period.  These omissions and inaccuracies are deemed to cause

8    injury under Labor Code § 226(e)(2).  Moreover, the wage statement misleads them as to their

9    employment status and the name of their legal employer.

10        144.    Plaintiff and Class Members have also been injured as a result of having to bring

11   this action to obtain correct wage information following Defendants' refusal to comply with the

12   requirements of the California Labor Code.  As a result, Defendants are liable to Plaintiff and

13   Class Members, for the amounts, penalties, attorneys' fees, and costs of suit provided by

14   California Labor Code §226(e).

15        145.    Plaintiff, on behalf of himself and the proposed Class, requests an assessment of

16   penalties as stated herein and other relief as described below.

### NINTH CAUSE OF ACTION
**Waiting Time Penalties**
**California Labor Code §§ 201-203**

19        146.    Plaintiff hereby realleges and incorporates by reference the allegations set forth

20   above as if fully set forth herein.

21        147.    California Labor Code §201 requires an employer who discharges an employee to

22   pay all compensation due and owing to said employee immediately upon discharge.  California

23   Labor Code §202 requires an employer to promptly pay compensation due and owing to said

24   employee within 72 hours of that employee's termination of employment by resignation.

25   California Labor Code §203 provides that if an employer willfully fails to pay compensation

26   promptly upon discharge or resignation, as required under California Labor Code §§201-202, then

27   the employer is liable for waiting time penalties in the form of continued compensation for up 30

28   work days.

148.  Plaintiff and other members of the Class have been terminated and/or left their employment with Defendants during the statutory period.  Defendants willfully failed and refused, and continue to willfully fail and refuse, to timely pay minimum wages, overtime compensation and sums wrongfully deducted from compensation to Plaintiff and to all other proposed Class Members whose employment with Defendants have ended or been terminated at any point during the statutory period.  As a result, Defendants are liable to Plaintiffs and other formerly employed members of the proposed Class for waiting time penalties, together with interest thereon, attorneys' fees, and costs of suit, under California Labor Code §203.

149.  Plaintiff, on behalf of himself and the proposed Class, request waiting time penalties pursuant to California Labor Code §203 and as described below.

## TENTH CAUSE OF ACTION
### Unfair Competition and Unlawful Business Practices
### California Business and Professions Code §§ 17200, et seq.

150.  Plaintiff hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

151.  California Business and Professions Code §17200 defines unfair competition to include, "unlawful, unfair or fraudulent business practices."

152.  Plaintiff and all proposed Class members are "persons" within the meaning of Business and Professions Code §17204, who have suffered injury in fact and have lost money or property as a result of Defendants' unfair competition.

153.  Defendants have been committing, and continue to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

i.   misclassifying Plaintiff and the Class members as independent contractors when they are employees;

ii.  violations of California Labor Code § 510;

iii. violations of California Labor Code §§ 226.7 and 512;

iv.  violations of California Code Regulations, Title 8 § 11090 ¶¶ 7, 11, and 12;

v.   violations of California Labor Code §§ 204, 221-223 and 400-410;

-33-

vi.   violation of California Labor Code § 2802;

vii.  violations of California Labor Code §§ 1174 and 1174.5;

viii. Violations of California Labor Code § 432.5;

ix.   violations of California Labor Code §226; and

x.    violations of California Labor Code §§ 201-202.

154.   Plaintiff reserves the right to identify additional unfair and unlawful practices by Defendants as further investigation and discovery warrants.

155.   As a result of its unlawful and/or unfair acts, Defendants have reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiff and proposed Class members. Defendants' unlawful and/or unfair conduct has also enabled Defendants to gain an unfair competitive advantage over law-abiding employers and competitors. Defendants must be enjoined from this activity and made to restore to Plaintiff and proposed Class members their wrongfully withheld wages, interest thereon, and related statutory penalties, pursuant to Business and Professions Code §§ 17202 and 17203.

156.   Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices.

157.   Plaintiff seeks a court order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to himself and members of the proposed Class, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

158.   Plaintiff, on behalf of himself and the proposed Class, requests restitution of unpaid wages, wage premiums, injunctive relief and other relief as described below.

**ELEVENTH CAUSE OF ACTION**
**Violation of California Business and Professions Code §§ 16600, et seq.**

159.   Plaintiff hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

160.   California Business and Professions Code § 16600 provides in pertinent part that

-34-

1  "every contract by which anyone is restrained from engaging in a lawful profession, trade, or
2  business of any kind is to that extent void."

3      161.    As is alleged herein, the unlawful non-compete clauses contained in Defendants'
4  common contracts with the Drivers prohibit Drivers from making certain deliveries for a
5  competitive delivery service, and therefore are utilized as a means of restraining the right of
6  employees to seek employment elsewhere.

7      162.    Plaintiff therefore alleges that he and members of the purported class were and
8  continue to be restrained in violation of § 16600.

9      163.    As a direct, legal, and proximate result of Defendants'. actions, Plaintiff and
10  members of the Class have suffered and continue to suffer injury.

11      164.    Plaintiff and the Class plead and reserve their right to seek equitable relief,
12  including a temporary and permanent injunction to ensure that Defendants herein will not seek to
13  enforce the non-compete clauses as to California employees and will not utilize said clause in the
14  future as to California employees.

15      165.    As a result of the illegal conduct outlined above, Plaintiff has retained attorneys to
16  protect his rights and those of the Class.  Therefore, Plaintiff and the Class also seek an award of
17  reasonable attorneys' fees, costs and expenses as may be allowed by law and as set forth elsewhere
18  herein.

19      166.    Wherefore, Plaintiff prays for judgment as set forth below.

20              **TWELFTH CAUSE OF ACTION**
21          **Violations of California Labor Code § 432.5**

22      167.    Plaintiff hereby realleges and incorporates by reference the allegations set forth
23  above as if fully set forth herein.

24      168.    California Labor Code § 432.5 prohibits employers from requiring any employee
25  or applicant for employment to agree, in writing, to any term or condition which is known by the
26  employer, or agent, manager, superintendent, or officer of the employer to be prohibited by law.

27      169.    Beginning at an exact date unknown to Plaintiff, but at least since four years prior
28  to the filing of this suit, Defendants have knowingly required California employees, as a condition
   of their employment, to enter into unlawful non-compete clauses as set forth herein.

-35-

170.     Defendants have known these are not lawful clauses, and that they are unreasonable and have been unreasonable at the times the agreements have been entered into.

171.     As a direct and proximate result of the aforementioned acts and practices and attempts to enforce the unlawful non-compete clauses, Plaintiff and the Class Members have suffered a loss of money and property, in the form of unlawfully recovered funds.

172.     As a result of the illegal conduct outlined above, Plaintiff has retained attorneys to protect his rights and those of the Class.  Therefore, Plaintiff and the Class also seek an award of reasonable attorneys' fees, costs and expenses as may be allowed by law and as set forth elsewhere herein.

173.     Wherefore, Plaintiff prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class he seeks to represent in this action, requests the following relief:

a.   That the Court determine that this action may be maintained as a class action under Code of Civil Procedure § 382;

b.   For an order appointing Plaintiff as representative of the Class

c.   For an order appointing Plaintiff's attorneys as Class Counsel;

d.   That the Court find that Defendants have been in violation of applicable provisions of the California  Labor Code §§510, 1194, and IWC Wage Order No. 9 by failing to pay overtime wages to Plaintiff and members of the Class;

e.   That the Court find that Defendants have been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 9 by failing to pay each member of the proposed Class for all hours worked;

f.   That the Court find that Defendants have been in violation of California Labor Code § 2802 by failing to reimburse the Plaintiff and the Class reasonable business expenses and losses;

g.   That the Court find that Defendants have been in violation of California Labor Code  §§ 221, 223 and 400-410, and IWC Wage Order No. 9 by making

1  unlawful deductions from Plaintiff's and the Class' wages;

2  h. That the Court find that Defendants have been in violation of California Labor

3     Code §§226.7 and 512 by failing to provide Plaintiff and members of the Class

4     with meal periods and therefore owe compensation under California Labor Code

5     §226.7(b) with respect to violations of California Code of Regulations, Title 8

6     §11090, ¶¶ 7 and 11;

7  i. That the Court find that Defendants have been in violation of California Labor

8     Code §§226.7 by failing to authorize and permit rest periods for Plaintiff and

9     members of the Class, and therefore owe compensation under California Labor

10    Code §226.7(b) with respect to violations of California Code of Regulations,

11    Title 8 §11090, ¶ 12;

12 j. That the Court find that Defendants have violated the recordkeeping provisions

13    of California Labor Code §§ 1174 and 1174.5 as to Plaintiff and the Class;

14 k. That the Court find that Defendants have been in violation of California Labor

15    Code § 226 by failing to timely furnish Plaintiff and members of the Class with

16    itemized statements accurately showing the total hours worked and wages earned

17    by each of them during each pay period;

18 l. That the Court find that Defendants have been in violation of California Labor

19    Code §§201 and 202 and therefore owe waiting time penalties under California

20    Labor Code §203 for willful failure to pay all compensation owed at the time of

21    termination of employment to Plaintiff and other members of the formerly

22    employed subclass;

23 m. That the Court find that Defendants have committed unfair and unlawful

24    business practices, in violation of California Business and Professions Code

25    §17200, *et seq.*, by their violations of the Labor Code and Wage Orders as

26    described above;

27 n. That the Court award restitution of funds that have been lost by Plaintiff and the

28    proposed Class members pursuant to the non-compete clauses for a period

1    beginning four years prior to the filing of this complaint;

2    o.  That the Court issue an order enjoining Defendants from continuing to use "non-
3        compete" clauses in their common contracts with Drivers, pursuant to California
4        Business and Professions Code §§ 16600, et seq.;

5    p.  That the Court order an accounting of the payroll records and/or delivery logs to
6        determine what restitution is owed and to whom, pursuant to California Business
7        and Professions Code §17203;

8    q.  That the Court award to Plaintiff and the proposed Class members compensation
9        and restitution for all wages owed, including wages at the designated rate, and
10       overtime, for all wage deductions, for the value of all meal and rest periods that
11       were not provided or authorized by Defendants, and for all reasonable and
12       necessary business expenses incurred by Drivers.

13   r.  That the Court award to Plaintiff and the proposed Class members statutory
14       and/or civil penalties as provided herein, including but not limited to Labor Code
15       §§ 203, 210, 226, and California Business and Professions Code § 17202;

16   s.  That Plaintiff and the Class be awarded reasonable attorneys' fees and costs
17       pursuant to Labor Code §§ 203, 225.5, 226, 1194, 1197, 2699(g)(1), and 2804,
18       Code of Civil Procedure § 1021.5,  and/or other applicable law;

19   t.  Any and all other applicable statutory penalties, as provided by law; and

20   u.  For such other and further relief as this Court deems just and proper.

22                        Respectfully submitted,

23   DATED:  February 7, 2019        **SCHNEIDER WALLACE COTTRELL**
24                                   **KONECKY WOTKYNS**

26                        By: _____
27                            Joshua G. Konecky
                             Nathan B. Piller
28                           Attorneys for Plaintiff

-38-
CLASS ACTION COMPLAINT
Santiago Lim, et al. v. Transforce, Inc., et al.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

DATED:   February 7, 2019

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS

By: _____
        Joshua G. Konecky
        Nathan B. Piller
        Attorneys for Plaintiff

-39-